**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**TIMOTHY DUNLAP,**
and
**LINDBERG JOHNSON, JR.,**

    Plaintiffs,

v.              Civil Action No. **3:17cv00252**

**CNU OF UTAH, LLC,
CNU OF KANSAS, LLC, and
CNU ONLINE HOLDINGS, LLC,**

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

  1. This is an action by consumers for violations of the federal Truth in Lending Act (TILA), 15 U.S.C. §§1601 et seq., the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693m(g), *et seq.* (EFTA), the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1961 et seq., and various state laws. The Defendants have worked together as part of an enterprise to charge the Plaintiffs interest at far more than twenty times the allowable rate of interest. Plaintiffs bring this action to recover statutory damages, actual damages, and a declaration that the lines of credit which the Plaintiffs received from the Defendant are both usurious and unenforceable. Plaintiffs also seek an award of attorneys' fees and costs.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1965, 15 U.S.C. § 1693m(g), and 15 U.S.C. § 1640(e), and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

## PARTIES

3. The plaintiffs are both natural persons and residents of this judicial district and division.

4. Defendant **CNU of Utah, LLC,** is a foreign limited liability company that is doing business in Virginia without having a registered agent in Virginia.

5. Defendant **CNU OF Kansas, LLC,** is a foreign limited liability company registered to do business in Virginia, and has CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia, 23060 as its registered agent.

6. Defendant **CNU Online Holdings LLC,** is a foreign limited liability company doing business in Virginia without having a registered agent in Virginia.

## STATEMENT OF FACTS

7. In March 2016, Mr. Dunlap, facing financial difficulty, opened a line of credit that had been offered by Defendants.

8. Mr. Dunlap opened the line of credit from his home in Virginia by using his computer.

9. Attached as Exhibit A is a true and correct copy of the contract for this line of credit, titled "Open-End Line of Credit Terms and Conditions" ("Dunlap credit contract").

10. Because the Dunlap credit contract was executed online at the Plaintiff's home, the place of contracting was the Plaintiff's residence.

11. Performance of the Dunlap credit contract was accomplished when funds from Defendants were deposited into his Virginia bank account, and he accessed these funds at his Virginia bank.

12. Because the funds were made available to him in Virginia, the performance of the Dunlap credit contract was in Virginia.

13. The Dunlap credit contract was incurred for personal use and was a consumer transaction.

14. The Dunlap credit contract is signed by the President of CNU Online Holdings LLC, as sole member of CNU of Kansas, LLC.

15. Although signed by the sole member of CNU of Kansas, LLC, page 2, Paragraph II, of the Dunlap credit contract, states that the party providing the account is "CNU of Utah, LLC".

16. Similar to Mr. Dunlap, in March 2016, Mr. Johnson needed money and opened a line of credit that had been offered by Defendants. ("Johnson credit contract"). (A true and correct copy is attached as Exhibit B).

17. He opened the line of credit from his home in Virginia by using his computer.

18. The Johnson credit contract used a similar form credit contract as Exhibit A, except that Exhibit B is signed by the President of CNU Online Holdings LLC, as sole member of CNU of Utah, LLC.

19. Because the Johnson credit contract was executed online at his home, the place of contracting was his residence.

20. Performance of the Johnson credit contract was accomplished when funds from the Defendants were deposited into his Virginia bank account, and he accessed these funds at his Virginia bank.

21. Because the funds were made available to him in Virginia, the performance of the Johnson credit contract was in Virginia.

22. The Johnson credit contract was incurred for personal use and was a consumer transaction.

23. CNU of Kansas, LLC is a lender licensed by the Kansas State Bank Commissioner to make loans from an office in Chicago to residents of Kansas.

24. CNU of Kansas, LLC is not licensed by Kansas to extend credit from its office in Chicago to residents of Virginia.

25. Kansas has not licensed any of the Defendants to extend credit in Virginia.

26. Under the heading "Governing Law" both Exhibit A and B state that CNU of Utah, LLC "is licensed by the Utah Department of Financial Institutions."

27. CNU of Utah, LLC has not been issued a license by the Utah Department of Financial Institutions.

28. The Utah Department of Financial Institutions does not license any non-bank lender like CNU of Utah, LLC to extend consumer credit in Virginia.

29. Utah law does not authorize a non-bank lender like CNU of Utah, LLC to extend consumer credit in Virginia.

30. The Utah Department of Financial Institutions conducts no regulatory oversight over Defendants' actions that are initiated outside of Utah and performed in Virginia.

31. Utah has not licensed any of the Defendants to extend credit in Virginia.

32. The statement that CNU of Utah, LLC was licensed by the Utah Department of Financial Institutions was a material statement.

33. The statement that CNU of Utah, LLC was licensed by the Utah Department of Financial Institutions was a false statement.

34. All Defendants knew that this statement was false.

35. Defendants made this statement in an attempt to avoid Virginia law regarding open-end credit.

36. No part of either transaction took place in Utah.

37. CNU of Utah, LLC operates out of the same Chicago address that is used by CNU of Kansas, LLC.

38. Utah has no substantial relationship with the transaction between Mr. Dunlap and Defendants, and no reasonable basis exists for Defendants to claim the transaction is subject to Utah law.

39. Both plaintiffs' credit accounts are regulated by Virginia law.

40. Under Virginia law, the maximum amount of annual interest that Defendants could have charged the Plaintiffs was 12%.

41. Instead of 12% interest, Defendants charged 299% annual interest in addition to an immediate 15% cash fee.

42. The Defendants work together in an ongoing enterprise to make unsecured cash advance loans and credit lines to individual consumers for personal, family, household or other non-business purposes.

43. Defendants work together to extend this credit at extremely high rates of interest, far more than twice the allowable interest rate.

44. Defendants sent Mr. Dunlap the periodic statement attached as Exhibit C.

45. Defendants sent Mr. Johnson the periodic statement attached as Exhibit D.

46. Both Mr. Dunlap and Mr. Johnson opted out of the arbitration clause in their respective credit contracts.

47. The Plaintiffs' core assertion underlying each of the claims asserted in this action is that Virginia law applies to both the Johnson credit contract and the Dunlap credit contract.

## FIRST CAUSE OF ACTION
## FEDERAL RICO

48. Plaintiffs re-allege and incorporate herein by reference all matters set forth in paragraphs 1-47 above.

49. Plaintiffs were injured in their property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

50. The Defendants associated with an enterprise engaged in interstate commerce.

51. The Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the collection of an unlawful debt.

52. The debt being collected was unlawful because the rate of interest greatly exceeded twice the allowable rate.

53. The Defendants conducted or participated, directly or indirectly, in the conduct of that enterprise's affairs through the racketeering activity of wire fraud through a scheme to defraud by use of the internet.

54. The fraud in their scheme was using a false statement in an effort to avoid Virginia law.

55. The enterprise is a web of legally distinct corporations as persons, including each of the Defendants and others, that are associated together for a common purpose of collecting unlawful debts.

56. These entities work together as part of a legally distinct enterprise called Enova International, Inc.

57. As part of the enterprise, the Defendants work together to establish credit contracts with consumers at far more than twice the allowable interest rate.

58. As part of the enterprise, the Defendants work together to establish credit contracts with consumers through the internet by falsely representing that CNU of Utah, LLC is licensed by the Utah Department of Financial Institutions.

59. As part of the enterprise, the Defendants work together to establish credit contracts with consumers through the internet by falsely representing that the transaction is covered by Utah law.

60. The enterprise manages and supervises the affairs of the Defendants.

61. Defendants' actions in violation of RICO were a proximate cause of the Plaintiffs' injuries.

## SECOND CAUSE OF ACTION
## VIRGINIA USURY LAW

62. The Plaintiffs re-allege and incorporate herein by reference all matters set forth in paragraphs 1-47 above.

63. Pursuant to Va. Code § 6.2-303, the contract rate of interest permitted on credit in Virginia is 12% per year unless a higher rate of interest is authorized by some other section of the Code of Virginia.

64. Although Defendants extended credit as a form of open-end credit, they did not satisfy the open-end requirements set forth in Va. Code § 6.2-312, which prohibits lenders from imposing a "finance charge" before application of a grace period of at least twenty-five (25) days.

65. Unless exempt from its provisions, the Virginia Consumer Finance Act also prohibits any person from engaging in the business of making loans in any principal amounts to individuals for personal, family, household or other non-business purposes, and charging, contracting for, or receiving directly or indirectly, any interest, charges, compensation, consideration or expense which in the aggregate are greater than the rate otherwise permitted by Va. Code § 6.2-303, unless otherwise exempt, or without having first obtained a consumer finance license from the Virginia State Corporation Commission (SCC). Va. Code § 6.2-1501.

66. None of the Defendants even obtained a license from the SCC.

67. Exhibits A, B, C and D make clear that finance charges were imposed from day one and that no grace period is allowed.

68. Defendants' failure to comply with the open-end requirements of Va. Code § 6.2-312 render the cash advances by Defendants to Plaintiffs subject to the consumer finance statutes.

69. Because the cash advances were subject to an annual interest rate of 299%, each credit contract was in violation of § 6.2-303.

70. Because the Defendants' cash advances were subject to an immediate fee of 15% prior to the expiration of the required 25 day grace period, the loan was in violation of § 6.2-312.

71. Therefore, the credit extended by Defendants is usurious.

72. Under § 6.2-1501 of the consumer finance statutes, if a lender who was not exempt from the provisions of those statutes and who had not obtained a consumer finance license, contracted to make a consumer loan, and charged, contracted for, or received, interest or other compensation in excess of 12% per year, the loan was and is null and void and the lender is forbidden to collect, obtain or receive any principal, interest or charges whatsoever on said loan.

73. Therefore, the cash advances made by the Defendants are void and the Defendants are forbidden from collecting any payments, in any manner, from Plaintiffs on these credit contracts.

### THIRD CAUSE OF ACTION
### THE VIRGINIA CONSUMER PROTECTION ACT

74. The Plaintiffs re-allege and incorporate herein by reference all matters set forth in paragraphs 1-47 above.

75. The Defendants are suppliers regulated by the VCPA, as that term is defined at Va. Code § 59.1-198.

76. Each Plaintiff entered into a consumer transaction with one or more of the Defendants regulated by the Virginia Consumer Protection Act.

77. Defendants violated Va. Code § 59.1-200(A)(14) by claiming that CNU of Utah had a license from Utah to extend credit into Virginia.

78. Defendants violated Va. Code § 59.1-200(A)(14) by claiming that each credit transaction was regulated by Utah law even though the extension of credit was not made to or from Utah, but was a line of credit made in Virginia to a Virginia resident by non-Utah based companies operating out of Chicago, Illinois.

79. Plaintiffs suffered a loss as a result of Defendants' violation of the VCPA because they became subject to demands for excessive and illegal interest.

## FOURTH CAUSE OF ACTION
## FEDERAL TILA

80. Plaintiffs reallege and incorporate herein by reference all matters set forth in paragraphs 1-47 above.

81. Under the TILA, the required initial disclosures for open-end credit contracts, like Exhibits A and B, are found at 15 U.S.C. § 1637(a), and explained further by Regulation Z, 12 C.F.R. § 1026.6(b).

82. Under the TILA, the required disclosures for open-end credit periodic statements, like Exhibits C and D, are found at 15 U.S.C. § 1637(b), and explained further by Regulation Z, 12 C.F.R. § 1026.7(b).

83. 15 U.S.C. § 1637(a)(1) and 12 C.F.R. § 1026.7(b)(2)(v) required that Defendants accurately disclose the conditions under which the grace period applied to the time period within which payment must be made in order to avoid additional finance charges.

84. 15 U.S.C. § 1637(b)(9) and 12 C.F.R. § 1026.7(b)(8) required that Defendants accurately state, on each periodic statement, the date by which or the time period within which payment must be made in order to avoid additional finance charges.

85. The initial account disclosures and the periodic statements sent to Plaintiffs violated the TILA because they did not accurately state the grace period that Virginia law requires on open end credit accounts that charge more than 12% interest.

86. Regardless of the number of violations in the past year, each Plaintiff is entitled to recover one award of statutory damages under the TILA.

**FIFTH CAUSE OF ACTION**
**FEDERAL EFTA- Plaintiff Johnson only**

87. Mr. Johnson realleges and incorporates herein by reference all matters set forth in paragraphs 1-47 above.

88. Defendants violated 15 U.S.C. § 1693l of the EFTA as to Mr. Johnson by using a writing that contained a provision limiting his right to cancel an ACH by notice to his financial institution three days prior to a scheduled withdrawal.

89. Specifically, the Johnson credit contract states under the heading "Full Force and Effect" the following:

**We May Initiate ACHs Until You Cancel This Authorization or Close Your Bank Account.** This ACH Authorization will remain in full force and effect until (i) we have received written notification from you of its termination in such time and in such manner as to afford us a reasonable opportunity to act on it or (ii) until your Account is closed.

90. 15 U.S.C. § 1693l states the following:

No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

91. 15 U.S.C. § 1693e(a) states, in pertinent part, that any "consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer."

92. Contrary the right guaranteed under EFTA that any ACH authorization may be canceled by three days notice to the financial institution, Defendants' form contract states that its ACH stays in full force and effect unless canceled in writing by written notice to them, or until the bank account is closed.

93. Mr. Johnson is entitled to recover one award of statutory damages under the EFTA in an amount between $100.00 and $1,000.00 based on the factors set forth in 15 U.S.C. § 1693m(b).

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court:

1. Declare that the Dunlap credit contract and the Johnson credit contract, and all cash advances under them, are null and void;

2. Permanently enjoin the Defendants from any attempt to collect any moneys from the Plaintiffs in connection to these contracts;

3. Award each Plaintiff treble the damages under the RICO, 18 U.S.C. § 1964(b);

4. Award each Plaintiff treble the damages under VCPA, Va. Code § 59.1-204(A) or minimum statutory damages;

5. Award each Plaintiff twice the finance charges under the TILA assessed against each account, 15 U.S.C. § 1640(a);

6. Award Mr. Johnson in an amount between $100.00 and $1,000.00 based on the factors set forth in 15 U.S.C. § 1693m(b);

7. Reasonable attorneys' fees and costs; and

    8.      Order such other and further relief as may be deemed proper and just.

                                              Respectfully submitted,
                                              Timothy Dunlap
                                              Lindberg Johnson, Jr.
                                              By Counsel

/s/_____
Dale W. Pittman, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB # 35434
Consumer Litigation Associates
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(540) 442-7706

Counsel for Plaintiffs